IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN LAMONT BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-128E |
| | ) | |
| v. | ) | Judge McLaughlin |
| | ) | Magistrate Judge Bissoon |
| SUPERINTENDENT RAYMOND J. SOBINA, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Summary Judgment (Doc. 54) be denied, and that Defendants' Motion for Summary Judgment (Doc. 58) be granted.

### II. REPORT

Plaintiff, Shawn Lamont Brown ("Brown" or "Plaintiff"), is a state prisoner who has filed a civil rights action pursuant to the provisions of 42 U.S.C. § 1983, asserting that his rights under the Eighth and Fourteenth Amendments have been violated. The parties have filed cross-motions for summary judgment (Docs. 54 and 58).

#### A. Legal Standard

A party's burden in response to a well-pleaded motion for summary judgment is to present ". . . specific facts showing that there is a *genuine issue for trial*" (Fed. Rule Civ. Proc. 56(e) (emphasis added)), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury

could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., 477 U.S. at 251-52.

### B. Plaintiff's claims

Plaintiff alleges in his Complaint (Doc. 7) that on October 1, 2007, while Defendant Kundrick was collecting lunch trays from prisoners in the Restricted Housing Unit ("RHU"), Plaintiff placed his tray "on the edge of the tray slot" in his cell door, and Kundrick opened the tray slot and threw the tray out of Plaintiff's cell into the corridor (Id., ¶ C). Kundrick then closed the tray slot, pinching Plaintiff's right index finger and causing it to bleed. Kundrick allegedly said, "I got you now Brown; you just assaulted me." (Id.). Kundrick and Officer Dick allegedly filed false misconduct reports indicating that Plaintiff threw his tray at Kundrick.

Plaintiff requested medical treatment for his finger, and Nurse Tracey came to Plaintiff's cell and applied toilet paper to the wound. Plaintiff states that Nurse Tracey later took pictures of his finger (Id.). Sergeant Akers is alleged to have thrown away Plaintiff's grievance concerning the incident.

In his Amended Complaint (Doc. 42), Plaintiff additionally asserts that he was fed "rotten, molded, spoiled" food loaf for 7 days following the October 1, 2007 incident as a sanction for allegedly throwing his lunch tray (Doc. 42, p. 5). Plaintiff also alleges that Captain Ireland signed Kundrick's "false" misconduct report (Doc. 42, p. 5).

Attached as an exhibit to the Complaint is a Disciplinary Hearing Report dated October 3, 2007, wherein Defendant Kundrick's version of events is recounted (Doc. 7-3, pp. 14-15). Specifically, Kundrick accused Plaintiff of failing to let go of the lunch tray as it was being

handed through the opening in Plaintiff's cell door.  Then, Plaintiff is alleged to have shoved the tray through the slot with such force that it went past Kundrick and down the stairs (Id., p. 14). Plaintiff was found guilty of attempting to assault Officer Kundrick and was given 120 days Disciplinary Custody.

Plaintiff's Amended Complaint contains several additional claims occurring on different dates.  Plaintiff alleges that he forgot his lunch ticket on August 26, 2007, but when he returned to his cell to retrieve it, he was told by Defendant Wright that he would have to wait for the next "line" for lunch service.  Plaintiff argued with Wright, and was issued a "false" misconduct for refusing to obey an order (Doc. 42, ¶ C).  Major Overmyer is alleged to have co-signed the report.

On December 7, 2007, Plaintiff argued with Defendant Clinger concerning Plaintiff's breakfast tray, which Plaintiff had set down near his door, but refused to hand through to Clinger.  Plaintiff alleges that he was in his bed and told Clinger, "Man just take the tray you already have it in your hand." (Doc. 42, p. 5).  Clinger "shoved" the tray back into Plaintiff's cell and filed a misconduct report accusing Plaintiff of throwing his own food tray.  Plaintiff was placed on a 7-day "food restriction" during which he was allegedly served "rotten, molded food loaf" that caused him to vomit (Doc. 42, p. 5).

On December 8, 2007, Defendant Dick filed a misconduct report accusing Plaintiff of urinating at him through the cell door (Doc. 42, p. 6).  Plaintiff asserts that he did not do this, but was, in fact urinating at his toilet when Dick came to the cell door and told Plaintiff "I'm going to bury you down here." (Doc. 42, p. 5).  Captain Ireland is alleged to have signed Dick's "false" report (Id.).

On December 31, 2007, Officer Whitehead allegedly attempted to serve Plaintiff a meal in a baggie that appeared to have been stepped on (Doc. 42, p. 6). Plaintiff was ordered to take his food, but when he attempted to do so, Officer Whitehead is alleged to have pulled Plaintiff's arm through the tray slot, and twisted it against the cell door (Id.). Plaintiff was again subjected to misconduct proceedings, this time for attempting to assault Officer Whitehead. Plaintiff was again placed on a diet of food loaf for 7 days. Plaintiff also gave a written version of events in his response to Misconduct A602642 (Doc. 61-2, p. 63). Plaintiff wrote that he believed the baggie of food he was given had been stepped on, and he requested another baggie. At this point, Whitehead told Plaintiff he was not going to eat, and Whitehead "attempted to grab my tray of food." (Id.). Officer Dick put his hand on top of the tray to prevent Plaintiff from getting food, and Officer Whitehead grabbed Plaintiff's hand and pulled it through the cell door, pinning it against the door (Id.).[1]

On July 18, 2008, after Plaintiff was released from the RHU and placed back in the general population, Officer Whitehead seized an extension cord from Plaintiff's cell. Plaintiff alleges that his cellmate, Lee Stewart, accused Plaintiff of being the reason that the cell search occurred, and threatened to harm Plaintiff (Doc. 42, p. 7). Plaintiff requested a new cell, but Sergeant Laird refused. Plaintiff also alleges that a false misconduct report was filed against him for refusing to obey an order, but that the Superintendent ultimately overruled the 120 day disciplinary sanction imposed.

---

[1] Defendants' version of events, as evidenced by the misconduct documents attached to the Complaint and also provided by Defendants, is that Plaintiff threw the food baggie at Officer Whitehead, and then tried to reach through the door and grab the food cart at which time Officer Whitehead applied a "goose neck" to Plaintiff's arm. Plaintiff then refused several orders to remove his arm from the food slot (Doc. 61-2, p. 61).

### C. Analysis

**1. Assault claims.**

The Eighth Amendment protects inmates against cruel and unusual punishment. It does not, however, protect an inmate against every minimal use of force. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)) ("Not every push or shove, even if it may later seem unnecessary . . . violates a prisoner's constitutional rights").

In an Eighth Amendment excessive force claim, summary judgment in favor of a defendant is appropriate where the evidence, viewed in the light most favorable to the Plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." Thomas v. Ferguson, 361 F.Supp.2d 43, 438 (N.J. 2004) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)). The central inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Mensinger, 293 F.3d at 649. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Brooks v. Kyler, 204 F.3d 102, 108-109 (3d Cir. 2000). The Court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat reasonably perceived by the responsible officials; and (5) the efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.

Plaintiff's claim that his finger was "pinched" in the food slot of his cell door by Officer Kundrick on October 1, 2007, does not support an inference that he was subjected to a "malicious, sadistic" use of force. Accepting as true Plaintiff's claim that Officer Kundrick instigated the incident by pulling the food tray through the food slot before he slammed the slot shut, there are no facts from which a jury could infer that Kundrick intended to injure Plaintiff, or that he even knew that Plaintiff's hand was in the way. Plaintiff has not presented evidence supporting a reliable inference of wantonness in the infliction of pain in this situation, and Defendant Kundrick is entitled to summary judgment.

The other alleged assault in this case occurred on December 31, 2007, when Plaintiff complained concerning the bagged lunch he was being served. Again, accepting as true Plaintiff's version of events, Officer Whitehead pulled Plaintiff's arm through the food slot in the cell door and twisted it against the door before releasing it only after a dispute arose concerning Plaintiff's lunch tray. Plaintiff's version of events would support a finding that he was offered food with which he believed was tampered, and that the Officers decided to remove his food tray and deny him lunch. Even if this is what actually occurred, Defendants' actions do not support an inference of the wanton infliction of pain. Indeed, Plaintiff's version of events establishes a justification for securing Plaintiff's arm, i.e., to permit Officer Dick to remove the food tray after a dispute arose with Plaintiff. Placing a prisoner's arm in a protective hold to permit removal of an item from the prisoner's cell certainly is not evidence of a deliberate intent to cause harm as opposed to an attempt to maintain order and discipline.

The Court is not certain whether Plaintiff also is alleging that having his arm "closed" in the tray slot is a violation of the Eighth Amendment. Plaintiff makes no allegation of suffering harm from the door closing on his arm, and he concedes that he did not remove his arm from the

tray slot, but instead let it hang there because he wanted to see a doctor (Doc. 61-2, p. 63). Again, this action cannot support an inference that Defendants acted maliciously or sadistically. Defendants' actions in forcing Plaintiff to pull his arm back into his cell are clearly actions consistent with maintaining order and discipline. The minimal force used in this respect does not give rise to an inference of a malicious intent to cause harm.

### 2. Claims of verbal harassment.

Defendants also seek summary judgment with respect to any claim Plaintiff is making for verbal harassment or threats by prison personnel. Allegations of verbal abuse do not state an Eighth Amendment claim. McCullough v. Miller, 2008 WL 4361254 *8 (W.D.Pa. Sept. 24, 2008) (Lancaster, J.) (collecting cases). Defendants are entitled to summary judgment with respect to Plaintiff's numerous claims of having been subjected to verbal harassment.

### 3. Medical claims.

Plaintiff asserts that he was denied effective treatment for the cut on his finger on October 1, 2007. Although Plaintiff concedes he was seen by Nurse Tracey immediately after the incident, he asserts that she treated him "through the door" and merely applied "toilet paper" to the cut. Defendants have provided the medical records from the incident, which indicate that antibiotic ointment and a "pressure dressing" were applied, and that the bleeding had stopped less than an hour later when Plaintiff was again seen by Nurse Tracey (Doc. 61-2, p. 81). Plaintiff does not contest that his finger ceased bleeding within an hour.

Generally, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1978). In the context of a claimed denial of medical treatment, an inmate must establish two elements to demonstrate a violation of his rights as protected by the Eighth Amendment: 1) that he was suffering from a

"serious" medical need; and 2) that the prison officials were "deliberately indifferent" to the serious medical need. Id. A denial of medical treatment violates the Eighth Amendment only when it results in "an unnecessary and wanton infliction of pain" or is "repugnant to the conscience of mankind." Id. at 105-106. "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105. The refusal to dispense "bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not by its refusal violate the Constitution." Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996). In considering whether an injury is serious, the Court must also consider whether "denial or delay causes an inmate to suffer a life-long handicap or permanent loss." Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) *cert. denied* 486 U.S.1006 (1988).

A cut on one's finger that is remedied by a brief application of a pressure dressing (whether made of toilet paper or not) is not a serious medical need for purposes of the Eighth Amendment. Further, Plaintiff immediately was seen by medical personnel, and was unquestionably given an effective treatment for his bleeding finger. Plaintiff again was seen by medical personnel within an hour to ensure that the bleeding had stopped, and Plaintiff does not indicate that he required further treatment. Defendant Nurse Tracey is entitled to summary judgment on this claim because there is no evidence of deliberate indifference to Plaintiff's medical needs (serious or otherwise).

### 4. False misconduct charges.

Plaintiff asserts that he was subjected to numerous falsified misconduct charges, and that this violates his rights under the Eighth and Fourteenth Amendments. A false misconduct charge does not itself qualify as an Eighth Amendment violation. Booth v. Pence, 354 F. Supp.2d 553,

559 (E. D. Pa. 2005). Further, no due process claim is stated when a prisoner alleges that misconduct charges were fabricated. Smith v. Mensinger, 293 F.3d 641, 653-654 (3d Cir. 2002) (due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports). Indeed, all that is required of a misconduct proceeding is that the inmate be afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Id.

Here, Plaintiff concedes he was provided with a hearing for each misconduct charge, and that he denied the charges each time. Further, the requirements of due process are satisfied if some evidence supports the decision to sanction a prisoner. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The misconduct charges referenced in the Complaint and Amended Complaint were swearing contests between Plaintiff and the accusing officers. Hence, there certainly was "some" evidence supporting each of the misconduct findings in this case.

Plaintiff also, however, asserts he was not permitted to call witnesses at his misconduct hearings. The Fourteenth Amendment's guarantee of due process requires a prison disciplinary examiner to grant the prisoner "an opportunity, when consistent with safety and correctional goals, to call witnesses and present documentary evidence in his defense." Walpole v. Hill, 472 U.S. 445, 454 (1985). These protections, however, are relaxed in situations in which the inmate is faced with something less than the loss of a liberty interest. Flanagan v. Shively, 783 F. Supp. 922, 930 (M. D. Pa.), aff'd 980 F.2d 772 (3d Cir. 1992). Disciplinary hearings are not part of the criminal prosecution and are intended to be informal and expeditious. Id. Here, Plaintiff concedes that he was permitted to give his version of events (and his defenses appear in the misconduct documentation), and he has not identified in his pleadings any witnesses or any

relevant testimony that was excluded. Therefore, Plaintiff has failed to present evidence supporting his claim that he was denied due process.

Finally, due process protections apply to prison misconduct proceedings only when a protected liberty interest is at stake. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). A period of disciplinary custody is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). In fact, the Supreme Court in Sandin found that, in the prison context, a 30 day period of disciplinary custody was not sufficient to create a protected liberty interest for purposes of a due process claim. Id. See also, Mensinger, 293 F.3d at 654 (seven months in disciplinary custody "does not, on its own, violate a protected liberty interest"); Sims v. Vaughn, 189 F. App'x 139, 141 (3d Cir. 2006) (67-day placement in the RHU did not involve atypical or significant hardship sufficient to give rise to liberty interest). Therefore, Plaintiff's assertion that he was denied witnesses at his misconduct proceedings does not state a claim for denial of due process for the additional reason that the result of those proceedings, i.e., Plaintiff's placement in the RHU for period ranging from 90 to 120 days, is not sufficient to give rise to a protected liberty interest.

### 5. Food loaf.

Plaintiff asserts that he was provided "food loaf" on two different occasions, for a period of one week each, as a sanction for alleged misbehaviour, and that his violates the Eighth Amendment. "A Food Loaf is a 29-30 ounce loaf (raw weight) made of various food ingredients as specified by the Department's standardized recipe…, that when blended together and baked, contains all the necessary caloric and nutritional requirements." (Doc. 61-2, p. 2). Providing an inmate with food loaf for 7 days is not a violation of the Eighth Amendment even if it is a

punitive measure. See, e.g., Gates v. Huibregtse, 69 Fed. Appx. 326 (7th Cir. 2003) ("As Gates has not claimed that nutri-loaf lacks the nutritional value its name implies, placing him on a temporary nutri-loaf diet because of his misconduct during meal service was not of itself a violation of the Eighth Amendment."); Adams v. Kincheloe, 743 F. Supp. 1385, 1391 (E.D.Wash. 1990) (placing inmate on disciplinary five-day diet of "nutra-loaf" did not violate the Eighth Amendment). While inmates have a right to a nutritionally adequate diet, Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir. 1990) ("prison officials have a responsibility to provide inmates with a minima of food, shelter and basic necessities"), they have no constitutional right to be served a particular type of meal. Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990). Here, Plaintiff was twice found guilty of committing misconducts related to his food service, and was twice placed on food loaf for a period of 7 days. Plaintiff's constitutional rights were not violated, and Defendants are entitled to summary judgment.

The Court has a duty to read Plaintiff's *pro se* complaint liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). Applying this standard, Plaintiff's claim that the food loaf is "molded, rotten and spoiled" and that it made him vomit can be read as raising a more particularized Eighth Amendment claim that the food loaf actually served to Plaintiff was contaminated or spoiled. There is support for the proposition that prison officials may violate the Eighth Amendment by serving "unsanitary, spoiled or contaminated food" if the prisoner also alleges that he or she suffered a "distinct and palpable injury." E.g., Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983). However, an inmate claiming an Eighth Amendment violation "must allege both an objective element - that the deprivation was sufficiently serious - and a subjective element - that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996). It must be remembered that only

"extreme deprivations" that deny "the minimal civilized measure of life's necessities . . . form the basis of an Eighth Amendment violation." Hudson, 503 U.S. at 9.

Here, Plaintiff offers no details concerning the food served to him beyond his allegation that the prison food loaf was "molded, rotten and spoiled," and that it caused him to vomit. Plaintiff does not indicate whether he vomited each time he was served food loaf, or whether this was an isolated occurrence. Likewise, Plaintiff does not indicate that there was any objective evidence that the food loaf was, in fact, contaminated or otherwise unsafe to eat when it was served to him. Instead, the Court is left with Plaintiff's bald assertions which appear to be nothing more than a colourful description of his gustatory opinion of food loaf, and not an attempt to establish that he was actually served dangerously prepared or spoiled food.

If Plaintiff is making a claim that he was served food unsafe for consumption, he has presented no evidence that he suffered anything more than temporary discomfort from ingesting the food loaf, i.e., it made him vomit. Nor does Plaintiff provide any evidence that any alleged adverse reaction was a continuing issue, or that it caused him to lose weight or become malnourished. Finally, there is no evidence that Plaintiff communicated to any named Defendant an inability to digest the food loaf, or the alleged condition of the food loaf. In short, Plaintiff has failed to present facts sufficient to permit a finding that he suffered an injury sufficiently serious to invoke the Eighth Amendment because he has not presented evidence that he experienced anything other than a single episode of vomiting.

Further, Plaintiff cannot make out the subjective element of an Eighth Amendment claim because he has not provided evidence that would permit an inference that any named Defendant was or should have been aware that the food loaf was unsafe to eat, or that they otherwise acted with deliberate indifference to Plaintiff's need for sustenance. Compare, Gates, 69 Fed. Appx. at

327-328 (allegations that prisoner vomited after ingesting food loaf twice in four-day period and vomited blood not sufficient to establish subjective element of Eighth Amendment claim where prisoner failed to communicate fact of vomiting blood and problem as presented to Defendant was a "normal" case of nausea or indigestion). Plaintiff has failed to present evidence sufficient to permit a finding that a violation of the Eighth Amendment occurred, and Defendants are entitled to summary judgment.

### 6. Failure to move to a new cell.

Defendants were under no obligation to move Plaintiff to a new cell after Plaintiff had an argument with his cellmate. Plaintiff has no constitutional right to his choice of cell. Rhodes v. Chapman, 452 U.S. 337 (1981) (prisoners have no right to their own cell).

Defendants also are entitled to summary judgment with respect to Plaintiff's claim that he was threatened by his cellmate. Prison officials may not act with deliberate indifference to a "substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994). Prison officials must "take reasonable measures to guarantee the safety" of inmates. Id. at 832. Here, no physical assault occurred, and Plaintiff has not alleged any continuing threat of harm.

### III. CONCLUSION

It is recommended that Plaintiff's Motion for Summary Judgment (Doc. 54) be denied, and that Defendants' Motion for Summary Judgment (Doc. 58) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by December 16, 2009.

                                                  s/Cathy Bissoon
                                                  CATHY BISSOON
                                                  UNITED STATE MAGISTRATE JUDGE

December 2, 2009

cc:
SHAWN LAMONT BROWN
GH-3325
SCI ALBION
10745 ROUTE 18
ALBION, PA 16475-0002